WILLIAM R. THROPP et al., respondents,

*v.*

PUBLIC SERVICE ELECTRIC COMPANY, appellant.

[Submitted December 7th, 1914.  Decided March 1st, 1915.]

The right of a public lighting corporation to occupy with its poles, by legislative authority, land in a public highway, the title to which is in an abutting owner, is a purely legal one.  So too is the right of the abutting owner to oust such corporation from the possession of such land if its occupation thereof is illegal.  Consequently the determination of the question, in a given case, whether the occupation by a public lighting corporation, of land in a public highway, by its poles, is within or without the legislative grant is one which, under our system of jurisprudence, is solely within the cognizance of courts of law.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, whose opinion is reported in *83 N. J. Eq. 564.*

*Mr. Frank Bergen,* for the appellant.

*Mr. Richard S. Wilson,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The complainants by their bill sought to obtain a mandatory injunction compelling the defendant corporation to remove certain electric light poles which it had erected in a public highway, in Hamilton township, Mercer county, in front of the complainants' land, the ultimate title to that part of the highway in which the poles were erected being in the complainants. At the time of the erection of the poles the defendant company was under a contract with the township authorities to furnish light for the highways thereof; and for the purpose of such public lighting it was entitled to erect poles, fix cross-arms upon them, and string wires thereon, without obtaining the consent of the abutting owners along the line of its route. *General Township act, § 67; Comp. Stat. p. 5600; Andreas* v. *Gas and Electric Co., 61 N. J. Eq. 69.*

The charge in the bill is that the defendant company, under color of the authority so conferred, erected poles much larger in size, both in diameter and height, than were required for the purpose of publicly lighting the highways of the township, in order to use them, not only for that purpose, but also for the carrying of wires thereon for private lighting, and for a high-tension transmission current; that the complainants have not consented to the erection of poles in front of their property for any such purpose, and that without such consent the erection of poles of the character described is a direct invasion of their property rights.

Upon final hearing it was adjudged that the poles referred to were much larger than the defendant company was legally enti-

tled to erect and maintain in front of the complainants' premises, and a decree was entered directing the defendant to remove them from in front of the complainants' property within thirty days after service of a copy thereof upon it. From this decree the defendant appeals.

From the foregoing recital it appears that the ground of action set up by the complainants in their bill is the tortious entry upon and occupation by the defendant of land, the legal title to which is in them; and that the relief they seek is the ejection of the defendant therefrom.

Before considering the meritorious questions involved in this litigation, it is necessary to determine whether the case presented comes within the cognizance of a court of equity; for, unless it does, the decree appealed from is without legal force. That, on the one hand, the right of the defendant to occupy, by legislative authority, land in a public highway the title to which is in the complainants (if such right exists); and that, conversely, the right of the complainants to oust the defendant from the possession of this land, if the defendant is in the wrongful occupation thereof, are, each of them, essentially, legal, not equitable, in character, cannot be doubted. *Mayor, &c., of Jersey City* v. *Gardner, 33 N. J. Eq. 622; French* v. *Robb, 67 N. J. Law 260.* As a general proposition it may be said that, in this state, where the dispute between the parties is over a purely legal right in land, the proper, and, indeed, the only, tribunal in which to settle it, is a court of law. *Borough of South Amboy* v. *Pennsylvania Railroad Co., 77 N. J. Eq. 249; Mason* v. *Ross, 77 N. J. Eq. 527; Imperial Realty Co.* v. *West Jersey and Seashore Railroad Co., 79 N. J. Eq. 168.* It is true that this rule is not universal; but the occasions in which it is not applicable are rare. The various classes of cases in which the power of equity to entertain jurisdiction over such disputes exists are specified by this court in *Hart* v. *Leonard, 42 N. J. Eq. 416.* It is not necessary to recite them here. A reference to the opinion in that case will show that the facts of the present case do not bring it within any of the excepted classes.

Another principle to be remembered in considering cases like the present is that courts of equity do not ordinarily entertain

jurisdiction of causes where there exists at law a remedy plain, adequate and complete to redress the wrong complained of. This rule, as was said by this court, in *Mayor, &c., of Jersey City* v. *Gardner, supra,* "stands paramount among those which serve to define the jurisdiction between courts of law and courts of equity."

That the complainants in the present case have a complete and adequate remedy at law seems to us to be beyond question. The wrong complained of is quite similar in its legal essence to that set up by the complainant in *Mayor, &c., of Jersey City* v. *Gardner, supra.* In that case the complainant filed his bill to restrain the municipality from wrongfully using lands belonging to him which had been condemned for a public highway, until compensation had been made to him for its taking. We pointed out, in our opinion, that "for such a wrong the action of ejectment generally lies, the result of such remedy being to give the plaintiff, if successful, the possession of his lands, and, under present procedure, damages for their detention;" and declared that "this gives as ample and complete redress as is within the power of any court to afford the suitor." That such an action will lie against a corporation which has wrongfully erected in a public highway poles, cross-arms and wires, without the consent of the owner of the soil, was specifically decided by this court in *French* v. *Robb, supra.*

The assumption of jurisdiction by the court of chancery, being in disregard of these fundamental rules, which "define the boundary of jurisdiction between courts of law and courts of equity," the decree under review must be reversed, and the court of chancery directed to transfer the cause with the record thereof, and all papers filed therein, either to the circuit court of the county of Mercer, or to the supreme court, for hearing and determination, pursuant to the provisions of "the Transfer of Causes act (1912)." *P. L. p. 417.*

GARRISON, J. (dissenting).

I do not question the soundness of the legal propositions stated in the opinion, but I deny their application to the decree under review.

The decree is that the poles intended for private lighting are larger than the defendant is lawfully entitled to maintain and that they be removed, to the end that others of a lawful size may be substituted in their stead. This decree, so far as it adjudges the question over which the court of equity took jurisdiction, is that the unlawful size of the poles intended for an unlawful purpose must be reduced to a size that is lawful for a lawful purpose, the rest is by way of execution. If this decree could be executed in any other way the court below would doubtlessly have adopted or permitted such method; no such method was laid before the court below or suggested to this court. The removal of the larger poles to make way for the smaller is therefore a mere incident to the execution of an otherwise valid decree.

To lay hold of such an incident of execution as if it were the point of the decree or the basis of the jurisdiction exercised by the court of chancery is, to say the least, most unfortunate, in view of the perfectly patent fact that the remedy by action of ejectment affords the complainant no relief at all from the dangers incident to the unlawful maintenance upon his property of a deadly current of electricity. Such action at law with its varying fortunes of jury trial and its review and of appellate procedures may run on for months or years, during all of which time the complainant will be exposed to a source of danger from which, if it be unlawful, he should be promptly relieved. Equity can give this prompt relief; law cannot.

I am not suggesting that because of this fact we should extend the jurisdiction of equity over real actions or permit that exclusive domain of the law to be invaded; what I do assert is that in an injunction suit where that remedy alone can give relief we should not lay hold of a mere incident of execution as the ground for the assertion of a legal jurisdiction which when invoked will be entirely powerless to afford the required relief.

The complainant's bill is neither in form or substance an action for the possession of land; what he seeks is not the possession of the few inches of his property on which the illicit pole is erected, but the protection of all of his property and possibly the lives of its occupants from an illicit use to which such pole is to be put and for which it is the preparation. The decree does

not eject the defendant, for when executed it leaves it in possession of so much of the complainant's land as is occupied by a pole intended for a lawful use; it is only by refusing to carry out the decree that the defendant may eject itself from complainant's land, but that is the voluntary act of the defendant and not that of the complainant or of the court. If, as was said in *French* v. *Robb,* in speaking of such poles, "equity will restrain their misuse in the future," why should not such misuse be restrained *ab initio* or as soon as such illicit character is clearly established?

Such is the sole object of the present suit following the case of *Taylor* v. *Public Service Corporation, 75 N. J. Eq. 371,* which was affirmed by this court in *78 N. J. Eq. 300.* A comparison of the case cited with that now before us shows to a *demonstration* that, unless we are to have two contrary rules, the present reversal is based upon an incident of execution that in nowise affects or involves the jurisdictional question discussed in the majority opinion.

I think I have made clear the ground upon which I vote to affirm the decree of the court of chancery.

I am requested by Mr. Justice Trenchard and by Judge White to say that they concur in the foregoing views.

*For affirmance*—GARRISON, TRENCHARD, WHITE—3.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, TERHUNE, HEPPENHEIMER, WILLIAMS—12.